# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

CHARLES KRATSCH,

    Plaintiff,

v.                                                        CASE NO. 5:05-CV-1428-IPJ

EXPRESSJET, INC.,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 14), supporting brief (doc. 15) and evidentiary submissions (doc. 14). Plaintiff filed a response (doc. 19) and supporting evidence (doc. 20), to which Defendant filed a reply (doc. 21). The court has carefully considered the motion, evidence and arguments submitted by the parties in support of their respective positions.

## I.  FACTUAL BACKGROUND

Plaintiff, Mr. Charles Kratsch, has sued defendant for allegedly violating the Americans with Disability Act (ADA), 42 U.S.C. § 12101 *et seq*. Plaintiff, Mr. Charles Kratsch, was hired as a Customer Service Agent ("CSA") by Defendant ExpressJet in Huntsville, AL in October 2000. (Kratsch Depo. at 95-96). As of

1

the filing of this lawsuit, Plaintiff was still employed by Defendant.  Plaintiff is a "Type I" insulin-dependent diabetic.  Plaintiff was diagnosed with Type I diabetes in 1987. (*Id*. at 66).  This fact became known to Plaintiff's supervisor, Mr. Guy Simpson, before or shortly after Mr. Simpson hired Plaintiff. (Simpson Depo. at 62).  Mr. Simpson has been a Type II diabetic for four years. (*Id*. at 63). Mr. Simpson became the General Manager of ExpressJet in Huntsville in November 1999. (*Id*. at 9).  Mr. Simpson remained in his position as General Manager when this lawsuit was filed. (*Id*. at 9).

Plaintiff must control his blood sugar through diet and medication.  (Kratsch Depo. at 67-69).  Plaintiff testified that in its controlled state, his diabetes does not preclude him from performing daily tasks.  (*Id*. at 73).  Plaintiff also testified that his diabetes does not prevent him from walking, seeing, hearing, speaking, or breathing.  (*Id*. at 74-75).  Plaintiff further testified that aside from two or three jobs, such as being a DEA agent, his having diabetes does not prevent him from working in a broad class of jobs.  (*Id*. at 73, 93).  Plaintiff admits that he has performed a wide range of jobs and job duties since being diagnosed with diabetes (*Id*. at 73, 93; *see also* Ex. B., Kratsch Job History).

Plaintiff has to take multiple injections daily in relation to his meal schedule.  This is done to control Plaintiff's diabetes (*Id*. at 67-69).  Despite his

efforts to control his condition, Plaintiff occasionally has episodes of low blood sugar. (*Id*. at 69-70). A few of these episodes have occurred while Plaintiff was at work. (*Id*. at 169-72, 180-81). In 2001, Plaintiff passed out at work because of low blood sugar (Complaint, ¶ 11). Additionally, Plaintiff testified that he had a couple of other low blood sugar incidents at work in 2002 and 2003 while he was in the break room. (Kratsch Depo. at 169-70, 180-81). In the incidents of 2002 and 2003 Plaintiff did not pass out, but Plaintiff or a co-worker had to give Plaintiff a soft drink or candy. (*Id*. at 169-72, 180-81). After he passed out in 2001 and on several other occasions prior to the 2004 incident, Mr. Simpson discussed with Plaintiff the importance of taking care of himself. (Kratsch Depo. at 172-74; Simpson Depo. at 76-77). Plaintiff understood that his ramp job required careful attention to safety. (Kratsch Depo. at 177-79).

On March 22, 2004, Plaintiff passed out at work in the break room after his shift ended. (*Id*. at 180-83). Plaintiff claims he was suffering from pneumonia, causing his blood sugar level to drop. (*Id*.). A co-worker summoned an ambulance for Plaintiff. (*Id*.). Following the incident of March 22, 2004, Plaintiff was issued a warning letter from Mr. Simpson and Ms. Healy, who was Plaintiff's immediate supervisor at the time. (*Id*. at 184-185; Simpson Depo. at 41; Ex. E, April 8, 2004 Letter). The letter was originally entitled "Record of Discussion – Termination

Warning Letter Workplace Safety." The letter expressed concern on behalf of Defendant for the safety of Plaintiff and Defendant's customers in regards to Plaintiff's episodes stemming from low blood sugar. (*Id.*). Additionally, the letter informed Plaintiff that Defendant counseled Plaintiff's co-workers to not attempt to assist Plaintiff in raising his blood sugar level but rather "contact 911 immediately." (*Id.*). After receiving the letter, Plaintiff complained to Ms. Healy and to his assigned liaison with company management. (Kratsch Depo. at 190). Plaintiff complained again during an on-site visit by Ms. Annicia Miller, Human Resources Representative for the station. (*Id.* at 190-93). After discussing the situation with Ms. Miller and Mr. Simpson, the word "Termination" in the subject line of the letter was deleted. (*Id.* at 199; Simpson Depo. at 104-05).

After the word "Termination" was deleted from the letter given to Plaintiff, Plaintiff pursued the complete removal of the letter from his employment file. (Kratsch Depo. at 200, 202). In the fall of 2004, Plaintiff explained to Ms. Kathy Frank from Human Resources in Huntsville that he had actually passed out due to pneumonia which caused his blood sugar to drop. (*Id.* at 202-03). Plaintiff believed this warranted the removal of the letter from his file. (*Id.*). Subsequently, Ms. Frank informed Plaintiff that the letter and evidence of discipline from this occurrence had been withdrawn by Defendant. (*Id.*). The

removal of the letter occurred months before the filing of this lawsuit in July, 2005.  (Complaint; Ex. G. Frank Letter).

In December of 2004, Ms. Healy's employment with Defendant ended and the Supervisor position was posted on or about January 3, 2005.  (Morgan Aff. at ¶ 3).  Plaintiff interviewed with personnel who did not work with Plaintiff in Huntsville.  (Morgan Aff. ¶ 5; Ward Aff. ¶ 2).  Mr. Simpson did not participate in the interview process or discuss the candidates with the interviewers.  (Morgan Aff. ¶ 12; Ward Aff. ¶¶ 2, 4, 6; Simpson Depo. at 123-24, 134-35).  Plaintiff did not receive the position.  (Morgan Aff. at ¶ 17; Ward Aff. at ¶ 7).

During his tenure with Defendant, Plaintiff has also been questioned by Mr. Simpson regarding someone breaking into Mr. Simpson's office.  (Kratsch Depo. at 30).  In 2001 Plaintiff was counseled about an airplane not being cleaned correctly.  (*Id*. at 22-23, 29).  Mr. Simpson also questioned Plaintiff about missing money from a cash drawer, accused Plaintiff of taking all the antacids out of the medicine box, and questioned Plaintiff about improperly dumping a lavatory cart.  (*Id*. at 30-32, 44, 48-49).  Plaintiff never received any discipline due to any of these incidents.  (*Id*. at 23, 27-28, 30-31, 32-34, 44-45, 49-51).  Additionally, Plaintiff's diabetes was never mentioned during any of these incidents.  (*Id*. at 223-26).

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e).  In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587;  *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III.  DISCUSSION

### Discrimination and Harassment Claims

In order to establish a prima facie case for disability discrimination or harassment under the ADA, Plaintiff must first establish that he is disabled.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *Stedman v. Bizmart*, 219 F. Supp.2d 1212, 1219-20 (N.D. Ala. 2002).  "Disability" is defined as: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  *Harris v. H & W*

*Contracting Co.*, 102 F.3d 516, 518-20 (11th Cir. 1996).  Plaintiff asserts that he suffers from a disability due to his Type I diabetes and that Defendant perceived him as disabled due to his Type I diabetes (Complaint ¶¶ 7, 9).

Plaintiff has not presented evidence showing he suffers from a disability. Mere diagnosis alone does not grant a plaintiff protection under the ADA. *Vaughn v. Nationsbank Corp.*, 137 F. Supp.2d 1317, 1323 (N.D. Ga. 2000) (citing *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996); *see also Collado v. UPS*, 419 F.3d 1143, 1152 (11th Cir. 2005) (affirming judgment as a matter of law, concluding that while plaintiff's diabetes may qualify as a physical impairment, there was no evidence from which a reasonable jury could conclude that it substantially limited any major life activity).

Instead of relying simply on a diagnosis, Plaintiff must show that the physical impairment limits a "major life activity."  *Stedman*, 291 F. Supp.2d at 1220.  Major life activities are those which average people perform with little or no difficulty, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. § 1630.2(i). Plaintiff asserts that his diabetes substantially limits his major life activities of eating and working.  However, Plaintiff has presented no evidence in support of these assertions.  During his deposition, Plaintiff testified that in its controlled

state, his diabetes does not limit his ability to perform everyday tasks or prevent him from walking, seeing, hearing, speaking, or breathing. (Kratsch Depo. at 73). Plaintiff offered no evidence that he is substantially limited in his eating due to his diabetes. Additionally, Plaintiff's diabetes does not prevent him from performing a wide range of jobs. (*Id*. at 74-75). Plaintiff testified that outside two or three other jobs, his diabetes does not prevent him from working. (*Id*.). Conclusively, Plaintiff testified that he has performed a wide range of jobs and job duties since his diagnosis. (*Id*. at 93). Without evidence that he is substantially limited in a major life activity, Plaintiff cannot be said to meet the legal definition of "disabled."

Likewise, Plaintiff has not presented any evidence showing that Defendant perceived him as suffering from a disability. In *Hilburn v. Murata Electronics NA, Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1990), the Eleventh Circuit stated that a perceived impairment must be believed to substantially limit a major life activity. In support of this assertion that Defendant perceived or regarded Plaintiff as disabled, Plaintiff asserts that Defendant evidenced this perception when Mr. Simpson issued the warning letter to Plaintiff and "harassed" Plaintiff about his management of his diabetes and his insulin injections. Plaintiff's offerings fall short of showing that Defendant believed Plaintiff was disabled. Plaintiff offers

9

no evidence that Defendant limited his work activities, even after Plaintiff passed out twice at work.  Such a restriction by Defendant would still not arise to a perception of disability.  *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000) (rejecting a "regarded as" claim where the only evidence presented was that the employer had prohibited the employee, who had diabetes and other illnesses, from driving a company vehicle once it learned of the employee's medical condition). Plaintiff was trained, employed, and required to complete the same job functions as the other CSAs in Huntsville, without restriction.  (Kratsch Depo. at 92-99, 220-21).   This fact alone rebuts Plaintiff's assertion that Defendant regarded him as disabled.

Without evidence of an actual or perceived disability, Plaintiff's discrimination and harassment claims under the ADA must fail.

## Retaliation Claim

Plaintiff alleges he was retaliated against for making complaints about disability discrimination.  To establish a prima facie case for retaliation under the ADA, Plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected expression.  Specifically speaking to the "causally related" element, the Eleventh Circuit has stated that "[a]t a

minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *see also Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) (reversing jury verdict where there was no evidence that the person who allegedly retaliated against the plaintiff knew of his protected conduct).

The decision to hire Mr. Brad Conner for the Supervisor position was a result of the interviews conducted by Ms. Rose Morgan and Mr. Ted Ward and their subsequent recommendation. (Morgan Aff. ¶ 17 & Att. 6; Ward Aff. ¶ 7). Mr. Simpson did not participate in the interviews and did not discuss the candidates with Ms. Morgan or Mr. Ward. (Simpson Depo. at 110, 120, 134-35; Morgan Aff. ¶ 6, 12; Ward Aff. ¶ 6). Ms. Morgan works from Houston and Mr. Ward from Louisville. (Morgan Aff. ¶ 1; Ward Aff. ¶ 1). Plaintiff, along with two other candidates, participated in the interview process by interviewing in Houston. (Morgan Aff. ¶ 10, 12; Ward Aff. ¶ 4). Ms. Morgan and Mr. Ward only had access to the resumes of the candidates and assert they had no knowledge that Plaintiff had any alleged disability or that he made any protected complaints. (Morgan Aff. ¶ 5, 13; Ward Aff. ¶ 8; Simpson Depo. at 137-38).

Plaintiff has not presented any evidence showing Ms. Morgan and Mr.

Ward had any knowledge of Plaintiff's participation in protected activity when they recommended Mr. Conner for the Supervisor position rather than Plaintiff. Without a showing of knowledge of the activity held by Ms. Morgan and Mr. Ward, Plaintiff cannot establish a causal relation between the adverse employment action he received and his participation in protected activity. Therefore, Plaintiff's retaliation claim must fail.

## IV.  CONCLUSION

Having considered the foregoing, court finds that Plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial. It is therefore **ORDERED** that Defendant's motion for summary judgment is **GRANTED**. The plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate Order.

**DONE** this 5th day of April 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE